GRODI *v.* MIEROW.

1. TRIAL—MOTOR VEHICLES—CONTRIBUTORY NEGLIGENCE.
   In an action for damages arising out of a collision of automobiles, on the question as to whether plaintiff was guilty of negligence as matter of law, the testimony and inferences therefrom most favorable to him must be accepted.

2. MOTOR VEHICLES—DRIVER APPROACHING INTERSECTION NOT REQUIRED TO STOP, BUT MAY ASSUME THAT OTHER DRIVER WILL OBEY LAW.
   An automobile driver approaching an intersection is not obliged, under the law, to stop at the crossing because he sees another car approaching at a rapid rate of speed, but he has a right to assume that the driver of said car will see him and have his car under control.

3. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
   Where plaintiff was only 12 feet from the center of the intersection when he saw defendant approaching about 50 feet therefrom, it cannot be said that plaintiff was guilty of contributory negligence as matter of law in proceeding to cross, especially in view of the inference from plaintiff's testimony that if defendant had continued to the right of the center, as was his duty under the law (Act No. 9, Pub. Acts 1919, § 18), the collision would not have occurred.

Error to Macomb; Reid (Neil E.), J. Submitted June 12, 1928. (Docket No. 76, Calendar No. 33,651.) Decided October 24, 1928.

Case by Jesse Grodi against Russell Mierow and another for personal and other injuries. Judgment for plaintiff. Defendants bring error. Affirmed.

*Bert V. Nunnelley* and *Douglas W. Ball,* for appellants.

As to effect of speed and speed regulations on liability for collision between automobiles or automobile and another vehicle at or near corner of streets or highways, see annotation in L. R. A. 1916 A, 747.

*George W. & Clifford A. John,* for appellee.

FEAD, C. J. This is review of a judgment for plaintiff in an action for damages arising out of a collision of automobiles. The only question is whether plaintiff was guilty of negligence as a matter of law. The testimony and inferences most favorable to plaintiff must be accepted. The collision occurred April 20, 1924, in daylight, on an open country road intersection where each driver could see the other 1,000 feet or more from the crossing. Defendant Russell Mierow approached from the west on the Sixteen mile road, which is 24 feet wide from bank to bank, at a rate of speed somewhere between 18 and 50 miles per hour and did not see plaintiff's car until he struck. Plaintiff, with his wife, three children, and some friends, approached from the south on Ryan road, 30 feet from bank to bank. He was driving at the rate of about 25 miles per hour and saw defendant when plaintiff was 150 feet from the crossing and defendant 500 or more feet away. Plaintiff paid little or no attention to defendant until he arrived at the edge of the crossing, when he saw defendant some 50 feet from the intersection. Plaintiff was then 12 feet from the center of the intersection, had 24 feet to go to cross the road, and defendant was 65 feet from the center. There was testimony that defendant was driving on the left side of the road. He said he drove in the center. Plaintiff did not state where defendant was driving, except inferentially. Nor did he undertake to estimate defendant's speed, except that he judged from the force of impact it must have been over 40 miles per hour. On approaching the crossing, plaintiff reduced his speed to 10 miles per hour, proceeded across at that rate and his car was struck at the

rear door when it had passed the center of the intersection and was in the northeast corner of it.

Some excerpts from plaintiff's testimony illustrate his reasons for proceeding:

"*Q.* When you started across the Sixteen mile road, do you know how fast you were going?

"*A.* Yes, sir.

"*Q.* How fast?

"*A.* About 10 miles.

"*Q.* What was your object?

"*A.* To see if everything was safe before I went across. * * * *If he had stayed on the right-hand side of the road,* he would never have hit me; he was on the wrong side of the road when he hit me. * * * I know he must have been going quite fast; I could not judge how fast he was going by looking at him a long distance; it could not be done. * * * The reason I went across the road was because I thought I was in the safe way; I did not know that he did not have control of his car."

Plaintiff had had 12 years' experience in driving automobiles.

A multitude of decisions may be cited to illustrate instances of contributory negligence as questions of fact or law, but the cases most nearly in point are *Geeck* v. *Luckenbill,* 215 Mich. 288, and *Smith* v. *Ormiston,* 242 Mich. 600, in which the facts closely resemble those at bar at the time preceding plaintiff's arrival at the crossing, and *Harris* v. *Bernstein,* 204 Mich. 685, like the instant case upon the subsequent facts.

The case is distinguishable from the first two cited, in that plaintiff here saw defendant approaching, arrived at the crossing with his car under control, and there formed a judgment that he could safely proceed at the reduced rate. It is peculiarly

within *Harris* v. *Bernstein,* in that plaintiff's car was struck at a place on the road where "it had a right to be and defendant's car did not have a right to be."

It was defendant's duty to pass plaintiff on the right. Act No. 9, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 4814); *Brown* v. *Mitts,* 187 Mich. 469; *Harris* v. *Bernstein, supra.* Plaintiff was not obliged, under the law, to stop his car at the crossing because he saw defendant approaching at a rapid rate of speed. *Brown* v. *Mitts, supra.* He had the right to assume that defendant would see him and have his car under control. Having only 12 feet and the length of his car to go to pass the center of the intersection, or 24 feet to cross the road, while defendant had 65 feet to travel, plaintiff could fairly have judged that it was safe to proceed, depending upon the disputed question of defendant's rate of speed. Plaintiff's quoted testimony is subject to the construction that defendant turned or swerved to the left to strike him. It was for the jury to determine what his testimony meant. He was not bound by law to anticipate that defendant would invade that part of the intersection where he had a right to be and defendant had not, nor did the testimony conclusively establish that a reasonably prudent person would have anticipated it. Whether, under the circumstances, plaintiff should have foreseen such invasion, or other violations of traffic law of which defendant was guilty, was for the jury.

Counsel for defendant stress the remark of Mr. Justice SHARPE in *Geeck* v. *Luckenbill, supra:*

"It seems incredible that a collision could have occurred without negligence on the part of both drivers."

The language, of course, was applied to the facts of the case. It was not a declaration that both drivers are to be held guilty of negligence as a matter of law in all collisions at intersections in open country with ample opportunity for observation. Nor did this court thereby intend to encourage, through exemption from civil liability, the monopolizing of, and imperiling of other citizens at, road intersections by that class of drivers commonly and accurately known in the vernacular as "road hogs" and "speed fiends."

The question of contributory negligence was properly for the jury, and the judgment is affirmed.

NORTH, FELLOWS, WIEST, CLARK, POTTER, and SHARPE, JJ., concurred. McDONALD, J., did not sit.